# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Steven M. Lindell,<br><br>             Plaintiff,<br><br>v.<br><br>Sanford, Pierson, Thone & Strean, PLC,<br>Cassandra M. Kuebler, Courtney Strean<br>and Alerus Financial, N.A.,<br><br>             Defendants. | Civil File No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**WITH JURY TRIAL<br>DEMANDED** |

COMES NOW Steven M. Lindell on behalf of himself and all other similarly situated, and for Plaintiff's Class Action Complaint against Sanford, Pierson, Thone & Strean, PLC, Cassandra M. Kuebler, Courtney Strean and Alerus Financial, N.A., states as follows:

## I.  INTRODUCTION

1.      The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., to eliminate abusive collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.     Plaintiff Steven M. Lindell brings this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., against Defendant Sanford, Pierson, Thone & Strean, PLC, in its illegal efforts to collect a consumer debt from Plaintiff. Mainly, its egregious attempt to collect a debt that is no longer owed by Steven M. Lindell. Such debt collection activities amount to abusive debt collection practices.

## II.  JURISDICTION

3.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 for subject matter jurisdiction and pursuant to 15 U.S.C. § 1692k(d) for claims under the Fair Debt Collection Practices Act.

4.     Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here. *See Ford Motor Co. vs. Montana Eighth Judicial District Court,* 2021 WL 1132515 (U.S. March 25, 2021).

5.     Defendants Cassandra M. Kuebler, Courtney Strean and Alerus Financial, N.A. have transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff via mail, telephone, and its civil court system, and registering its entity to do business in Minnesota, while Plaintiff was located within and permanently residing within the State of Minnesota.

6.      Defendants Cassandra M. Kuebler, Courtney Strean and Alerus Financial, N.A. have transacted business within the State of Minnesota by operating a law office, practicing law in Minnesota, being licensed in Minnesota, sending and receiving mail within Minnesota, and maintaining collection employees in Minnesota.

7.      Defendant Alerus Financial, N.A. has transacted business within the State of Minnesota by lending to Minnesota consumers, including Plaintiff, and attempting to collect a debt from Plaintiff via mail, telephone, and Minnesota's civil court system, and by registering its entity to do business in Minnesota, while Plaintiff was located within and permanently residing within the State of Minnesota.

### III.  PARTIES

8.      Plaintiff Steven M. Lindell (hereinafter "Plaintiff" or "Lindell") is a natural person who resides in the City of Eden Prairie, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

9.      Lindell has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

10.     Defendant Sanford, Pierson, Thone & Strean, PLC ("Sanford" or "Sandford Firm") is a Minnesota corporation and law firm operating from a principal office address of 1905 East Wayzata Boulevard, Suite 220, Wayzata, MN 55391.

11.     Defendant Cassandra M. Kuebler ("Kuebler") is an individual residing in Minnesota.

12.     Kuebler is a licensed Minnesota Lawyer, Minnesota bar number 402161, registered with the Judicial Branch of Minnesota and employed at the Sanford Firm.

13.     Defendant Courtney Strean ("Strean") is an individual residing in Minnesota.

14.     Strean is a licensed Minnesota Lawyer, Minnesota bar number 340807, registered with the Judicial Branch of Minnesota and a named partner at the Sanford Firm.

15.     Sanford was retained by Alerus Financial, N.A. ("Alerus") to collect a debt on its behalf.

16.     Alerus is a national banking association organized under the laws of the United States, with its headquarters located at 401 DeMers Avenue, Grand Forks, ND 58201.

17.     Sanford, Kuebler, and Strean are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6), using an instrumentality of interstate commerce or the mails in a business with the principal purpose of collecting debts owed or due to another or who regularly enforces security interests.

18.     Sandford's website, located at the <ssmnlaw.com> domain name, identifies the law firm's practice areas as "creditor remedies," including

"Collections" and "Litigation." A screen shot of those practice areas from the website is below:

## Creditor Remedies

Consumer & Commercial Workout

Secured Transactions

Replevins

Foreclosures

Collections

Bankruptcies

Litigation

19.     Both Kuebler's and Strean's individual website profiles list creditor remedies as a primary practice area.

20.     A search of Minnesota Court Records Online reveals numerous court filings in consumer credit and consumer contract matters undertaken by Defendants on behalf of Alerus and other consumer lenders.

## IV.  FACTS

21.     On June 29, 2015, Lindell executed and delivered a Promissory Note ("Note") for the principal amount of $262,837.70 payable to Alerus Financial, N.A.

22.     The Note was secured by a mortgage granted by Lindell and his ex-wife, securing payment with real property with address of 17401 Northern Lights Trail,

Eden Prairie, MN 55347 ("Home"). This mortgage was a second mortgage—subordinate to another mortgage.

23.     This obligation was primarily for personal, family or household purposes, namely a second mortgage (hereinafter the "Alerus Debt").

24.     The Alerus Debt is a "debt" as that term is defined under 15 U.S.C. § 1692a(5).

### *The Alerus Debt is Satisfied through Lindell's Short Sale of His Home*

25.     On February 14, 2018, partially because of his divorce, Lindell short sold his Home.

26.     As a result of the short sale, Lindell paid the first mortgage in full.

27.     Also, as a result of the short sale, Alerus received a payment in an amount less than the amount then owed.

28.     As a result of the short sale, Alerus accepted the partial payment as payment in full of the debt and released the mortgage against the Home.

29.     The short sale closing documents pay off letters demonstrate that the payment to Alerus was conditioned on its acceptance of the partial payment as payment in full of the debt.  (Short Sale Payoff Letters attached as **Exhibit A**.)

30.     On February 20, 2018, to evince the satisfaction of the debt and release of the mortgage, Alerus executed and recorded a Mortgage Release that states Alerus "hereby certifies that the Mortgage Release is, with the indebtedness thereby secured, fully paid and satisfied." (Mortgage Release attached as **Exhibit B**.)

31.     That Mortgage Release was recorded on February 22, 2018 in the Hennepin County Office of the County Recorder as document A10531237.  It is a publicly available document.

32.     Despite Alerus' acceptance of partial payment in full satisfaction of the debt, two months later, on April 13, 2018, Lindell received a letter from Alerus through its counsel, Dudley & Smith, asserting that Lindell owed a debt to Alerus.

33.     In this communication, Alerus claimed Lindell owed it $128,236.46.

34.     Lindell contacted Alerus, through counsel, and informed them that they were wrong.  He did not owe any debt to Alerus.

35.     On May 11. 2018, Lindell faxed a letter to the law firm of Dudley & Smith, Alerus' counsel.  That letter stated:

> Please use this letter as my answer to your letter dated April 13, 2018: The debt claim that you have sent me **is disputed**.

36.     On June 6, 2018 Joseph Dudley of Dudley & Smith, on behalf of Alerus, acknowledged Lindell's dispute that the account was satisfied, and terminated collection efforts.

37.     On August 16, 2018, Alerus, through counsel Dudley & Smith, recommenced its collection efforts.

### *The Alerus Debt is Dismissed with Prejudice*

38.     On August 29, 2018, Alerus served a summons and complaint on Lindell by serving a copy of the summons and complaint on his son, who was eighteen years old and lived with Lindell at their home.

39.     By serving the summons and complaint, Alerus commenced an action against Lindell.

40.     In Minnesota state court, parties may commence an action without initially filing the complaint. *See* Minn. R. Civ. P. 3.

41.     After serving Lindell, Alerus failed to do anything else related to the action.

42.     Rule 5.04 of the Minnesota Rules of Civil Procedure states, in relevant part, that "[a]ny action that is not filed with the court within one year of commencement against any party is deemed dismissed with prejudice against all parties."  Minn. R. Civ. P. 5.04.  This rule took effect in 2013.

43.     Because Alerus failed to file the action against Lindell by August 29, 2019, the action was dismissed with prejudice by operation of law.

44.     By virtue of the dismissal with prejudice of the action against him, even if Lindell owed Alerus any debt after the 2018 short sale, as of August 30, 2019, he owed nothing.

### *Sanford Attempts to Collect the Satisfied and Legally-Barred Alerus Debt*

45.     On May 5, 2022, Alerus, through new counsel Cassandra M. Kuebler ("Kuebler") of Sandford, Pierson, Thone & Strean, PLC, sent a dunning letter to Lindell stating that he owed Alerus $169,496.10.  (A copy of the May 5, 2022 Dunning Letter is attached to Lindell Decl. as **Exhibit C**.)

46.     Any reasonable and prudent attorney, upon opening a file for a client, would make a good faith inquiry into the client's factual allegations and claims.

47.     Kuebler also either knew that Lindell had previously disputed that he owed the debt or failed to ask Alerus if Lindell had any defenses to the debt.

48.     Kuebler either knew that Alerus had previously sued Lindell or failed to ask Alerus if it have ever previously sued Lindell.

49.     By dunning Lindell and asserting he owed a debt he did not owe, Kuebler either failed to undertake the required due diligence to investigate the veracity of her client's claims, or she undertook the due diligence and ignored the prior action's dismissal with prejudice and ignored Lindell's prior dispute of the debt.

50.     Regardless, in the May 5, 2022 letter, Alerus and Kuebler failed to inform Lindell that he owed nothing and that they could do nothing to collect from him.

51.     Moreover, the May 5, 2022 letter omits the validation information prescribed under 12 CFR § 1006.

52.     Pursuant to 15 U.S.C. § 1692(d) "Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5519(a)], the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this subchapter."

53.     Accordingly, the Consumer Fraud Protection Bureau ("CFPB") issues rules prescribed under 12 CFR § 1006, commonly referred to as Regulation F.

54.     Requirements under 12. U.S.C. 1006.34(c) are set out as follows:

> **Validation information**. Pursuant to paragraph (a)(1) of this section, a debt collector must provide the following validation information.
>           (1) Debt collector communication disclosure. The statement required by § 1006.18(e)

(2) Information about the debt. Except as provided in paragraph (c)(5) of this section:

(i) The debt collector's name and the mailing address at which the debt collector accepts disputes and requests for original creditor information.

(ii) The consumer's name and mailing address

(iii) If the debt collector is collecting a debt related to a consumer financial product or service as defined in § 1006.2(f), the name of the creditor to whom the debt was owed on the itemization date.

(iv) The account number, if any, associated with the debt on the itemization date, or a truncated version of that number.

(v) The name of the creditor to whom the debt is currently owed.

(vi) The itemization date.

(vii) The amount of the debt on the itemization date.

(viii) An itemization of the current amount of the debt reflecting interest, fees, payments, and credits since the itemization date. A debt collector may disclose the itemization on a separate page provided in the same communication with a validation notice, if the debt collector includes on the validation notice, where the itemization would have appeared, a statement referring to that separate page.

(ix) The current amount of the debt

(3) **Information about consumer protections**.

(i) The date that the debt collector will consider the end date of the validation period and a statement that, if the consumer notifies the debt collector in writing on or before that date that the debt, or any

portion of the debt, is disputed, the debt collector must cease collection of the debt, or the disputed portion of the debt, until the debt collector sends the consumer either verification of the debt or a copy of a judgment.

(ii) The date that the debt collector will consider the end date of the validation period and a statement that, if the consumer requests in writing on or before that date the name and address of the original creditor, the debt collector must cease collection of the debt until the debt collector sends the consumer the name and address of the original creditor, if different from the current creditor.

(iii) The date that the debt collector will consider the end date of the validation period and a statement that, unless the consumer contacts the debt collector to dispute the validity of the debt, or any portion of the debt, on or before that date, the debt collector will assume that the debt is valid.

(iv) If the debt collector is collecting debt related to a consumer financial product or service as defined in § 1006.2(f), a statement that informs the consumer that additional information regarding consumer protections in debt collection is available on the Bureau's website at www.cfpb.gov/debt-collection.

(v) If the debt collector sends the validation notice electronically, a statement explaining how a consumer can, as described in paragraphs (c)(4)(i) and (ii) of this section, dispute the debt or request original-creditor information electronically.

(4) **Consumer-response information**. The following information, segregated from the validation information required by paragraphs (c)(1) through (3) of this section and from any optional information included pursuant to paragraphs (d)(3)(i) and (ii), (d)(3)(iii)(A), (d)(3)(iv) and (v), (d)(3)(vii) and (viii) of this section, and, if provided on a validation notice, located at the bottom of

the notice under the headings, "How do you want to respond?" and "Check all that apply:":

> (i) Dispute prompts. The following statements, listed in the following order, and using the following phrasing or substantially similar phrasing, each next to a prompt:
>
>> (A) "I want to dispute the debt because I think:";
>> (B) "This is not my debt.";
>> (C) "The amount is wrong."; and
>> (D) "Other (please describe on reverse or attach additional information)."
>
> (ii) Original-creditor information prompt. The statement, "I want you to send me the name and address of the original creditor.", using that phrase or a substantially similar phrase next to a prompt.
>
> (iii) Mailing addresses. Mailing addresses for the consumer and the debt collector, which are the debt collector's and the consumer's names and mailing addresses as disclosed pursuant to § 1006.34(c)(2)(i) and (ii).

55.     Sanford's May 5, 2022 Letter fails to include all of the information described above.

56.    Specifically, the Letter only provided the total amount of debt along with the

name of the creditor and the following attached Notice:

## DEBT VALIDATION NOTICE

Please be advised that our firm has been retained to take action in regard to your past due account and that our firm is a debt collector.

The attached demand letter is an attempt to collect a debt, and any information obtained will be used for that purpose.

**If you dispute the validity of this debt or any portion thereof, you should notify us within thirty (30) days after receipt of this letter. If you do not, the debt will be assumed to be valid. If you notify us in writing within thirty (30) days that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you. Upon your written request within the thirty (30) day period, we will provide you with the name and address of the original creditor, if different from the current creditor.**

**SANFORD, PIERSON, THONE & STREAN, PLC**
Attorneys for Alerus Financial, N.A.

57.    Accordingly, the Letter failed to include multiple disclosures and

statements required pursuant the rules promulgated by the CFPB.

58.    The Letter fails to include:

a.   A mailing address at which the debt collector accepts disputes and

requests for original creditor information;

b.   The name of the creditor to whom the debt was owed on the

itemization date;

c.   The account number;

d. The name of the creditor to whom the debt is currently owed;

e. An itemization date;

f. The amount of the debt on the itemization date; and

g. An itemization of the current amount of the debt reflecting interest, fees, payments, and credits since the itemization date.

All in violation of 12 CFR § 1006.34(c)(2).

59. The Letter failed to provide any of the specific dates required under 12 CFR § 1006.34(c)(3); therefore, it failed to properly advise Plaintiff of relevant information concerning consumer protections.

60. The Letter failed to provide the necessary Consumer-response information required under 12 CFR § 1006.34(c)(4).

61. The Letter failed to state who the current creditor is.

62. In addition to failing to provide all of the information required by the various subsections of 12 CFR § 1006.34(c), the Letter also failed to clearly and conspicuously provide the validation information generally, in violation of 12 CFR § 1006.34(d).

63. On June 1, 2022, Lindell responded to Kuebler by delivering a letter to her that said,

Please use this letter as my answer to your letter dated May 5, 2022. The debt claim that you have sent me is disputed.

64.    Any reasonable and prudent consumer collection attorney, upon receiving a response from a consumer debtor disputing that a debt was owed, would make a good faith inquiry into the debtor's purported defenses.

65.    Here, Lindell, being an unsophisticated consumer, did not know that the prior lawsuit had been dismissed with prejudice as a matter of law.

66.    However, Lindell did believe in good faith that Alerus had accepted the partial payment from the 2018 short sale as full satisfaction of the debt.

67.    If Kuebler had made any good faith inquiry into Lindell's defenses, she would have discovered the prior lawsuit and its dismissal with prejudice.

68.    As well, even if the prior action had not been dismissed with prejudice, had Kuebler undertaken a good faith inquiry into Lindell's defenses, she would have discovered that Lindell had reasonable basis for his belief that Alerus had accepted his partial payment from the 2018 short sale as payment in full and he owed nothing.

69.    Had Kuebler undertaken a good faith inquiry into Lindell's defenses, she would have discovered that Lindell's belief that Alerus had accepted his partial payment from the 2018 short sale as payment in full was supported by substantial evidence, including publicly recorded documents.

70.    On June 8, 2022, Kuebler responded to Lindell and stated that the debt was valid.  (June 8, 2022 Kuebler Response Letter attached to Lindell Decl. as **Exhibit D**.)

71.     By responding that the debt was valid when it was not, Kuebler either failed to undertake the required due diligence to investigate the veracity of her client's claims, or she undertook the due diligence and ignored the prior action's dismissal with prejudice.

72.     On June 22, 2022, Chris Willette ("Willette"), who was Lindell's realtor for the short sale, also contacted Kuebler to dispute the debt on Lindell's behalf.  In a letter to Kuebler, he said,

> In regards to your letter to Steve Lindell dated June 8, 2022, Steve is not responsible for any debt with regards to his previous closed loan with Alerus.  Steve completed a short sale and there was no promissory note with borrower in accepting the short sale.  The short sale was complete over 4 years ago and closed 2/14/2018.

73.     Any reasonable and prudent consumer collection attorney, upon receiving a response from a consumer debtor disputing that a debt was owed, would make a good faith inquiry into the debtor's purported defenses.

74.     If Kuebler had made any good faith inquiry into Lindell's defenses, she would have discovered that Lindell had reasonable basis for his belief that Alerus had accepted his partial payment from the 2018 short sale as payment in full and he owed nothing.

75.     If Kuebler had made any good faith inquiry into Lindell's defenses, she would have discovered the prior lawsuit and its dismissal with prejudice.

76.     Willette continued to contact Alerus through counsel to attempt to settle Lindell's purported debt.

77.    On June 27, 2022, Alerus served a summons and complaint on Lindell, which commenced this action.

78.    On September 8, 2022, Alerus through Attorney Kuebler sought an entry of default against Lindell.

79.    Alerus sought default even though Lindell had communicated with Kuebler that he disputed the debt.

80.    Lindell's response,

> Please use this letter as my answer to your letter dated May 5, 2022. The debt claim that you have sent me is disputed.

is enough under Rule 8 to constitute an answer.  Minn. R. Civ. P. 8.

81.    Willette's June 22, 2022 response, asserting that Lindell did not owe the debt, interposed just a few days before service of the complaint, was enough under Rule 8 to constitute an answer.

82.    Despite receiving substantive responses from Lindell and Willette, on Lindell's behalf, both stating that Lindell did not owe the debt, Kuebler and Alerus sought an entry of default.

83.    On August 3, 2022, in seeking an award for attorney fees concurrent with seeking an entry of default, Attorney Kuebler represented to Lindell that she was going to seek an award of $1,875.00.

84.    In that communication, she represented that if Lindell "contest[ed] the reasonableness of the $1,875.00 in attorneys' fees, Alerus may seek an award of fees in excess of $3,000.00."

85.     Any reasonable and prudent consumer collection attorney, upon seeking an award of attorney fees against a consumer debtor, would make a good faith inquiry into the reasonableness of those fees in light of the consumer's basis to contest them.

86.     If Kuebler had made any good faith inquiry into Lindell's defenses, she would have discovered that Lindell had reasonable basis for his belief that Alerus had accepted his partial payment from the 2018 short sale as payment in full and he owed nothing.

87.     If Kuebler had made any good faith inquiry into Lindell's defenses, she would have discovered the prior lawsuit and its dismissal with prejudice.

88.     Because Alerus' claims had been dismissed with prejudice, and because Lindell had substantively responded to Alerus' claims, it was unreasonable for Kuebler and Alerus to seek any award, including an award of attorney fees.

89.     By responding that either $1,875.00 or an amount in excess of $3000 was a reasonable amount for an attorney fees award for a default motion, Kuebler either failed to undertake the required due diligence to investigate the veracity of her client's claims, or she undertook the due diligence and ignored the prior action's dismissal with prejudice and that Lindell's substantive defenses against the debt constituted an answer, making an award of any attorney fees in default *per se* unreasonable.

90.     Any reasonable and prudent consumer collection attorney would acknowledge that seeking an award of any attorney fees incurred in connection

with attempts to collect a satisfied or legally barred debt is *per se* unreasonable, illegal, and if done knowingly, unethical.

91.    Despite knowing that Lindell, and Willette on Lindell's behalf, provided defenses to Alerus' claim, on August 3, 2022, Kuebler provided a false affidavit to the Court in support of Alerus' seeking of an award of attorney fees.

92.    In that Affidavit, Kuebler falsely states that "Defendant Steven M. Lindell was personally served with a Summons and Complaint and that more than twenty-one (21) days have passed since completion of such service and Defendant has failed to answer or otherwise defend against Plaintiff's claims." (*See* Ex. M.)

93.    On September 8, 2022, despite knowing that Lindell, and Willette on Lindell's behalf, provided defenses to Alerus' claim, Kuebler provided a false Affidavit of No Answer to the Court in support of Alerus' seeking of an entry of default against Lindell.

94.    In that Affidavit of No Answer, Kuebler falsely states that "the defendant has failed to answer or otherwise defend against plaintiff's claims herein."

95.    Alerus and Kuebler obtained a default judgment against Lindell on September 1, 2022. They docketed it on the same day.

96.    The judgment amount is for $174,713.08.

97.    Any reasonable and prudent consumer collection attorney, upon seeking an award of a six-figure judgment against a consumer debtor, would make a good faith inquiry into whether the debtor actually owed the debt.

98.    In November 2022, Lindell, through counsel, questioned why Alerus and Kuebler sought default judgment since Lindell had proffered defenses to the debt.

99.    On November 21, 2022, Lindell, through counsel, informed Kuebler that Kuebler's office had settlement communications with Mr. Willette. Therefore, Kuebler's Affidavit of No Answer was not accurate.

100.   When Lindell, through counsel, demanded that Alerus vacate the default judgment, Kuebler refused.

101.   On January 18, 2023, Lindell, through counsel, presented the Mortgage Release to Kuebler, and asserted that the language of the release specifically represented that the debt had been discharged: "with the indebtedness thereby secured, fully paid and satisfied."

102.   Kuebler first responded that the language was irrelevant because "I have reviewed the release with my client. The document was generated by a third party and the reference to the satisfaction of the indebtedness is a mistake."

103.   The Mortgage Release, which stated that Alerus had accepted Lindell's payment in full satisfaction of the debt, is a publicly available document found in the Hennepin County abstract title records.

104.   The Mortgage Release corroborated Lindell's defense that he did not owe a debt.

105.   By asserting that Lindell owed a debt that he did not, which contradicted the Mortgage Release signed by her client, Kuebler either failed to undertake the required due diligence to investigate the veracity of her client's claims, or she

undertook the due diligence and ignored her client's representations in the Mortgage Release that Lindell had satisfied the Alerus debt.

106. In response to Kuebler's allegations that Mortgage Releases' representations of debt satisfaction were not correct or genuine (i.e. "[t]he document was generated by a third party and the reference to the satisfaction of the indebtedness is a mistake"), Lindell asserted it was genuine and presumed to be correct.

> The document was signed by [Alerus'] Assistant Vice President. Whether it was a mistake or not, [Alerus] satisfied the indebtedness.

107. After receiving Lindell's communication as to the authenticity of the Mortgage Release, Kuebler and Alerus filed what it called a "corrective mortgage release."

108. Attorney Kuebler stated that "upon learning of the error in the 2018 mortgage, a corrective mortgage release was executed."

109. When Kuebler sent this email, she copied Atty Courtney Strean.

110. Attorney Strean is a partner at the firm of Sandford Pierson Thone Strean that supervised Attorney Kuebler.

111. In her email, Kuebler's passive voice in this email obscures that Brent Gulbranson, a Loan Servicing Specialist of Alerus Financial, signed this "corrective" document.

112. Her passive voice in that email also obscures that it was drafted by Kuebler's law firm.

113.    Correcting her passive voice, she should have said "upon learning of the error in the 2018 mortgage, <u>Alerus executed a corrective mortgage release that my law firm drafted</u>." (Suggestions on how to correct the passive voice underlined.)

114.    The "corrective mortgage release" purported to, in one fell swoop, make $174,713.08, or such similar amount, due and owing by the filing of a single document with the Hennepin County Recorder.

115.    That document falsely represented that the Mortgage Release could be purportedly corrected to make a fully satisfied debt miraculously unsatisfied with the filing of a document.

116.    More specifically, the corrective mortgage release represented that the discharge of the six-figure debt was a mere "scrivener's error."  It said

> the Mortgage Release erroneously recited that the referenced indebtedness had been paid in full and fully satisfied, in addition to other scrivener's errors.

> Said Mortgage Release in no way satisfies or pays in full the indebtedness which the lien originally secured.

(January 23, 2023 purported corrective mortgage release ("purported corrective mortgage release") attached as **Exhibit E**.)

117.    Related to the purported corrective mortgage release, there is nothing in the Minnesota Title Standards that allows for a purported "corrective" mortgage to change the nature of a debt, to resurrect a prior-satisfied debt, or to make a debt previously not owed to be subsequently owed after recording.

118. To the extent that Alerus or Attorney Kuebler believed that the Mortgage Release's representations of the satisfaction of the debt was borne out of mistake, they could have brought a motion before the state court to demonstrate how the doctrine of mistake applied to the Mortgage Release.

119. Indeed, the jurisprudence of the doctrine of mistake is vast and rich before the Minnesota courts.

120. Any reasonable and prudent consumer collection attorney, upon becoming aware of a document signed by her attorney that stated that a consumer debt was satisfied would make a good faith inquiry into whether the consumer debt was actually owed.

121. At a minimum, when presented with a document executed by her client stating that the Lindell debt was "fully paid and satisfied," Kuebler should have concluded a *bona fide* factual dispute as to whether the consumer debtor owed the debt existed and acted consistent with that factual dispute, including vacating the default judgment.

122. Also, when presented with a document executed by her client stating that the Lindell debt was "fully paid and satisfied," Kuebler should have concluded a *bona fide* legal dispute as to whether Alerus execution of the Mortgage Release containing that satisfaction language was a legal mistake, and acted consistent with that factual dispute, including vacating the default judgment.

123. Moreover, Attorney Strean, when presented with a "corrective" mortgage that negated Alerus' representation that Lindell's purported debt had been paid

in full, should have made a good faith inquiry into whether the consumer debt was actually owed.

124.    Any inquiry by Attorney Kuebler or Attorney Strean should have led them to the conclusion that Lindell had interposed defenses in a manner constituting an answer and that his defenses had merit, making their seeking of default an abuse of process.

125.    Any inquiry by Attorney Kuebler or Attorney Strean should have also led them to discover that Alerus' had previously sued Lindell, and that action had been dismissed with prejudice, making their prosecution of this action, and their attempts to unilaterally reverse a prior satisfaction via recording, an abuse of process.

126.    Alerus, through Kuebler, has served a wage garnishment on Lindell to collect under the judgment.

127.    Defendants have used false and deceptive collection practice in violation of the FDCPA in an attempt to collect the Alerus debt from Lindell.

128.    By filing a complaint on a legally-barred debt and prosecuting the claim through to entry of judgment and further to post-judgment collection actions, Sanford, through its debt collector agents, deceived the district court as to the legal status and character of the Alerus Debt.

129.    Because the Complaint and Motion for Default Judgment seeks the determination that Lindell owes money that he does not, Defendants have made false representations as to the legal status and character of the Alerus Debt.

130.    Upon learning of Defendant's efforts seeking summary adjudication for a debt that is not owed, Lindell was shocked, horrified and extremely upset that Defendants had continued their efforts to collect a debt that was no longer owing.

131.    Lindell has been actually damaged as he has incurred attorneys' fees to defend the action against Sanford.

132.    Lindell's actual damages are the collateral damages of being required to report this improper and illegal judgment to prospective clients, resulting in a loss of livelihood.

133.    Lindell is a Series 7, Series 63 and Series 65 licensed Investment Advisor.

134.    As a part of his FINRA licensure, he is required to disclose any judgments to prospective clients.

135.    Furthermore, since Sanford docketed the judgment, it is a matter of public record for the astute prospective and existing client to unearth, with no context as to its improper entry and docketing, and no opportunity for explanation as to Lindell's bona fide defenses or revelation of the fact that the action was barred.

136.    In today's competitive Investment Advisor market, an advisor's ability to gain new clients with a recent six figure financial judgement disclosure is difficult, to say the least. Moreover, several million-dollar accounts have moved recently without other obvious reason why.

137.    Lindell has also suffered emotional distress as a result of Sanford's attempts to collect the Alerus Debt because he genuinely believed that the debt may not have expired and was owing.

138.    That distress is evidenced by stress, anxiety, loss of sleep, diminishment of happiness and an overall reduction in quality of life. His loss of business and the toll Sanford's unlawful actions have taken had spoiled his hopes for retirement.

139.    At 76 years old and without any retirement investments, for the past 10 months he has been sapped of his previous energy and optimism only to have them replaced with anger, hopelessness, and a new-found urge to avoid ordinary socializing.

140.    The garnishments, harassment, and threats of collection as to what little assets he does possess have contributed to him becoming depressed.

141.    His stress and anxiety from these events has spurred trips to the emergency room for pain in his chest.

142.    ". . . [T]he FDCPA bars a debt collector from filing or threatening a lawsuit to collect a time-barred debt." *Nelson v. Midland Credit Mgmt., Inc.*, 828 F.3d 749, 751 (8th Cir. 2016) (quoting *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001)).

143.    Defendants' collection efforts against Lindell were illegal actions and omissions in an effort to collect the Alerus Debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§

1692c(a)(1), 1692c(b), 1692d, 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(1), 1692f, and 1692f(1), among others, as well as violations of other state laws.

144.    In April 2023, Lindell and Alerus stipulated to vacate the entered judgment and to dismiss the collection matter with prejudice.

## CLASS ALLEGATIONS

145.    Plaintiff brings this claim on behalf of the following case, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

146.    The class consists of:

    a.  All individuals nationwide;

    b.  To whom Sanford sent an initial collection letter;

    c.  Attempting to collect a consumer debt;

    d.  Which was sent on a date on or after the Consumer Fraud Protection Bureau ("CFPB") Regulation F took effect on November 30, 2021;

    e.  Which failed to include all necessary notices under 12 CFR 1006.34; and

    f.  Failed to clearly identify the current creditor;

    g.  Which letter was sent on or after a date one (1) year prior to the filing of the action.

147.    There are questions of law and fact common to the Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issue is whether the Defendant's written communication

to consumers, in the form attached as **Exhibit C**. violate 15 U.S.C. §§ 1692e, and 1692g.

148. The identities of all class members are readily ascertainable from the records of defendants and those companies and entities on whose behalf they attempt to collect debts.

149. Excluded from the Plaintiff Class is the Defendants and all officers, members, partners, managers, directors and employees of the Defendants and its respective immediate families.

150. Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

151. Plaintiff will fairly and adequately protect the interests of the Plaintiff Class defined in this complaint.

152. Plaintiff has retained counsel with the experience in handling consumer lawsuits, complex legal issues, and class actions, and neither Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

153. The class is so numerous that joinder of all members is impracticable.

154. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

155.   Certification of a class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. Defendants have acted in a uniform manner toward the class thereby making injunctive and declaratory relief appropriate to cease further and future illegal conduct.

156.   Plaintiff requests the Court to certify a hybrid class or classes combining the elements of Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for equitable relief.

## SUMMARY

157.   The above-described collection conduct by Defendants in their efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

158.   These collection actions taken by Defendants, and the collection employees employed by Sanford, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

159.   These violations by Defendants were knowing, willful, negligent and/or intentional, and Sanford did not maintain procedures reasonably adapted to avoid any such violations.

160.   Defendants' collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and

truthfully with respect to any action for the collection of any consumer debt.

161.    Defendants' deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to substantively respond to Defendants' collection efforts because Plaintiff could not adequately respond to the Defendants' collection efforts related to a debt that did not exist.

162.    Plaintiff has suffered emotional distress and has actual damages as a result of the conduct by Defendants in filing suit against Plaintiff on a debt that it knew was time-barred.

## Respondeat Superior Liability

163.    Defendants' actions and omissions of the individuals employed to collect debts, and the other debt collectors employed as agents of Sanford who communicated with Plaintiff, were committed within the time and space limits of their agency relationship with their principal, Sanford.

164.    The acts and omissions by these individuals and these other debt collectors were incident to, or of the same general nature as, the responsibilities these agents were authorized to perform by Sanford in collecting consumer debts.

165.    By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal.

166.    Sanford is therefore liable to Plaintiff through the doctrine of *Respondeat Superior* for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not

limited to violations of the FDCPA in its attempts to collect this debt from Plaintiff.

## V.  TRIAL BY JURY

167.    Plaintiff requests a trial by jury on all issues so triable.  U.S. Const. amend. 7.  Fed. R. Civ. P. 38.

## VI.  LEGAL CLAIMS

### COUNT I

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(15 U.S.C. § 1692 *et seq.*)**
**Against Sanford, Kuebler, and Strean**

168.    Plaintiff incorporates by reference all of the above paragraphs in this Complaint.

169.    Lindell is a consumer within the meaning of 15 U.S.C. § 1692a(3).

170.    Sanford, Kuebler, and Strean are a debt collectors within the meaning of 15 U.S.C. § 1692a(6), using an instrumentality of interstate commerce or the mails in a business with the principal purpose of collecting debts owed or due of another, and one who regularly enforces security interests. Specifically, it attempts to collect Alerus' debts.

171.    Defendants' debt collection efforts directed towards Lindell violated various provision of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

172.    Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

173. Sanford, Kuebler, and Strean violated 15 U.S.C. § 1692e by:

a.      Omitting the required representation of the character, amount and/or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).

b.      By failing to include all of the necessary information regarding the debt, including:

      i. the itemization date, the name of the creditor to whom the debt was owed on the itemization date; the total amount due at the itemization date; and an itemization of the current amount of debt reflecting interest, fees, payments, and credits since the itemization date in violation of 12. C.F.R. § 1006.34(c)(2);

      ii. By failing to include any specification as to the dates that the validation period would end in violation of 12 C.F.R. § 1006(c)(3);

      iii. By failing to include the dispute prompts prepared by the CFPB, or anything resembling the same, in violation of 12 C.F.R. § 1006(c)(4); and

      iv. By making a false and misleading representation in violation of 15 U.S.C. §1692e(10).

174. As a result of Sanford's, Kuebler's, and Strean's violations of the FDCPA by failing to comply with the rules set forth in 12 C.F.R. §1006 *et seq*., Plaintiff is entitled to statutory damages in an amount up to $1,000.00 and such amount as

the court may all for all other class members, pursuant to 15 U.S.C. §

1692k(a)(2)(B); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §

1692k(a)(3) from Sanford, Kuebler, and Strean.

## COUNT II

### MALICIOUS PROSECUTION
### Against All Defendants

175.　Plaintiff incorporates by reference all of the above paragraphs in this

Complaint.

176.　The Minnesota Court of Appeals has held that,

> To state a claim for malicious prosecution, a claimant must demonstrate that:
>
> > (1) the action was brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of [claimant]

*Kellar v. VonHoltum,* 568 N.W.2d 186, 192 (Minn. Ct. App. 1997),

*review denied* (Minn. Oct. 31, 1997).  "Probable cause for pursuing a

civil action consists of such facts and circumstances as will warrant a

cautious, reasonable and prudent person in the honest belief that his

action and the means taken in prosecution of it are just, legal and

proper." *First Nat'l Bank of Omaha v. Marquette Nat'l Bank,* 482 F.

Supp. 514, 522–23 (D. Minn. 1979), *aff'd,* 636 F.2d 195 (8th Cir.

1980), *cert. denied,* 450 U.S. 1042 (1981).

*Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. Ct. App. 2006).

177. Defendants lacked the requisite probable cause or reasonable believe that they could prevail on the merits of this civil suit, because this alleged debt was already satisfied or legally-barred because if its prior dismissal with prejudice.

178. Defendants' representations in its correspondence and motions to the district court included false representations made in an attempt to defraud the district court.

179. Defendants instituted the civil suit with malicious intent as evidenced by the fact that Defendants were clearly barred from commencing it after Lindell previously satisfied the debt.

180. Defendants instituted the civil suit with malicious intent as evidenced by the fact that Defendants were clearly barred from commencing it after the failure to file the previous complaint within one-year of its commencement.

181. Defendants also acted with malicious intent because they supported seeking of a default judgment with a false affidavit to the Court asserting that Lindell had not raised any defenses to the debt.

182. Defendants also acted with malicious intent because they ignored record evidence of the underlying debt's satisfaction, substantiating Lindell's defenses. And when faced with evidence of satisfaction, Defendants recorded title documents in an effort to avoid or excuse its client of Lindell's defenses to the action.

183.    Plaintiff was clearly and unfairly twice-vexed by this civil collection suit

brought by Alerus against him after Defendants knew that the debt was satisfied

and the action was legally-barred.

184.    Defendants' conduct as further describe herein therefore states a claim for

malicious prosecution with respect to Plaintiff.

## COUNT III

### ABUSE OF PROCESS
### Against All Defendants

185.    Plaintiff incorporates by reference all of the above paragraphs of this

Complaint.

186.    In defining the legal contours of a claim for an abuse of process, the

Minnesota Supreme Court has held:

> In *Hoppe v. Klapperich*, 224 Minn. 224, 231, 28 N.W.2d 780,
> 786 (1947), we stated:
>
> '* * * **The essential elements of an action for abuse of
> process are only two, namely, (a) the existence of an
> Ulterior purpose, and (b) the act of using the process
> to accomplish a result not within the scope of the
> proceeding in which it was issued, whether such
> result might otherwise be lawfully obtained or not.**
> The gist of the action is the misuse or misapplication of the
> process, after it has once been issued, for an end other than
> that which it was designed to accomplish.' (Italics supplied in
> part.)
>
> The court went on to observe that **the test is whether the
> process was used to accomplish an unlawful end for
> which it was not designed or intended, or to compel a
> party to do a collateral act which he is not legally
> required to do.** It was also noted that there must be injury
> to either person or property and that indirect injury to

> business or good name is insufficient. *Behrendt v. Rassmussen*, 234 Minn. 97, 47 N.W.2d 779 (1951).

*Kittler & Hedelson v. Sheehan Properties, Inc.*, 295 Minn. 232, 238–39, 203 N.W.2d 835, 840 (1973) (emphasis added).

187.    By commencing the civil suit on a debt that Lindell had previously satisfied, Sanford had an ulterior purpose in attempting to make Lindell pay this alleged debt, when that alleged debt was in fact no debt was owed.

188.    By commencing the civil suit on a debt underlying an action dismissed with prejudice, Sanford had an ulterior purpose in attempting to make Lindell pay this alleged debt, when that alleged debt was in fact no debt was owed.

189.    By commencing the civil suit, Sanford sought to compel Lindell to do a collateral act which Lindell was not legally required to do, namely, to defend another lawsuit for this debt even though the action was dismissed.

190.    Sanford's conduct as further described herein therefore states a claim for an abuse of process with respect to Lindell.

## COUNT IV

### ATTORNEY FRAUD AND DECEIPT
### Against Sanford, Kuebler, and Strean

191.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint.

192.    Defendant Kuebler was an attorney licensed to practice law in the State of Minnesota at all times material to this complaint.

193.    Defendant Strean was an attorney licensed to practice law in the State of

Minnesota at all times material to this complaint.

194.    Defendant Sanford is a law firm bound by the acts of its attorneys under

the doctrine of respondeat superior.

195.    Under Minn. Stat. § 481.06, "[e]very attorney at law shall:

> (1) observe and carry out the terms of the attorney's oath . . . (3)
> counsel or maintain such causes only as appear to the attorney legal
> and just . . . (4) employ . . .  such means only as are consistent with
> truth . . . (6) encourage the commencement or continuation of no
> action or proceeding from motives of passion or interest."

196.    According to Minn. Stat. § 358.07(9), in relevant part, attorneys swear an

oath that they will use no falsehood or deceit:

> You do swear that you will support the Constitution of the United
> States and that of the state of Minnesota, and will conduct yourself
> as an attorney and counselor at law in an upright and courteous
> manner, to the best of your learning and ability, with all good fidelity
> as well to the court as to the client, and that you will use no falsehood
> or deceit, nor delay any person's cause for lucre or malice. So help
> you God.

197.    Based on Attorney Kuebler's above-described actions, Attorney Kuebler

has failed to maintain her oath and has failed to carry out her duties as an

attorney in the State of Minnesota.

198.    Based on Attorney Strean's above-described actions, Attorney Strean has

failed to maintain her oath and has failed to carry out her duties as an attorney in

the State of Minnesota.

199.    Because of Attorney Kuebler's and Attorney Strean's failure to carry out

their duties as an attorney, Lindell has suffered extensive damages.

200. Minn. Stat. § 481.071 provides that "[e]very attorney or counselor at law who shall be guilty of any deceit or collusion . . . shall forfeit to the party injured treble damages, to be recovered in a civil action."

201. Accordingly, Defendants Kuebler and Strean, who by collusion and deceit of injured Plaintiff, shall forfeit to Plaintiff treble damages.

202. As a direct and proximate cause of Defendants Kuebler's and Strean's breach of its and its attorneys' duties as attorneys in the state of Minnesota, Plaintiff has suffered actual damages in an amount to be determined by a jury and is entitled to costs, reasonable attorney's fees, and other equitable relief as determined by the court.

203. Pursuant to Minn. Stat. §§ 481.07 and 481.071, Defendant Sanford is liable to Plaintiff for treble damages.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Steven M. Lindell prays for judgment against Sanford, Pierson, Thone & Strean, PLC, as follows:

1.      For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1), for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A), and for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

2.      For an award of actual and compensatory damages against Defendants and for Plaintiff in an amount to be determined by a jury for their malicious prosecution;

3.      For an award of actual and compensatory damages against Defendants and for Plaintiff in an amount to be determined by a jury for its abuse of process;

4.      For an award of treble damages in an amount based upon the value of the funds taken from Plaintiff by Defendants in excess of the amounts permitted by law and his additional actual damages, pursuant to Minn. Stat. § 481.71, against each Defendant and for Plaintiff; and

5.      For such other and further relief as to the Court appears just and equitable, including an order awarding Plaintiff his costs, disbursements, and attorney's fees.


Respectfully submitted,

Dated: May 3, 2023              By: /s/Carl E. Christensen
                                Carl E. Christensen (#350412)
                                Christopher Wilcox (#392536)
                                **CHRISTENSEN LAW OFFICE PLLC**
                                305 North Fifth Ave., Ste. 375
                                Minneapolis, MN 55401
                                Ph: (612) 473-1200
                                Fax: (612) 823-4777
                                carl@clawoffice.com
                                chris@clawoffice.com

Dated: May 3, 2023

By: /s/Thomas Lyons Jr.
Thomas Lyons Jr. (#249646)
Carter B. Lyons (#403655)
**CONSUMER JUSTICE CENTER**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommy@consumerjusticecenter.com
carter@consumerjusticecenter.com